(CHANCERY.)

## COLSON, v. THOMPSON.

Bill for the specific- execution of an alleged agreement to convey to the plaintiff one third of a certain tract of land in Kentucky, belonging to the defendant, as a compensation for locating and surveying the same.   Bill dismissed.

In order to obtain a specific performance of a contract, its terms should be so precise as that neither party can reasonably misunderstand them.   If the contract be vague and uncertain, or the evidence to establish it be insufficient, a court of equity will not enforce it, but will leave the party to his legal remedy.

The plaintiff, who seeks for the specific performance of an agreement, must show that he has performed, or offered to perform, on his part, the acts which formed the consideration of the alleged undertaking on the part of the defendant.

APPEAL from a decree of the circuit court for the district of Kentucky.

The appellee filed his bill in that court, stating that, in the year 1779, a number of persons amongst whom was the defendant below, who is the appellant in this court, employed him, the complainant, to locate lands for them, in the then district of Kentucky; that he received from the defendant certain land warrants to the amount of 25,000 acres, which he located for him on the 20th of May, 1780.  That the terms on which he was to do the business were, that the owner of the warrants should furnish all the money that should be necessary for locating and surveying the said lands.  That the complainant should direct the doing thereof, and receive, for his compensation, what

should be given to other persons for similar services.
The bill then avers, that the usual proportion which
was then generally given to locators for similar ser-
vices, was one third part of the land so located by
them. The complainant further alleges, that he
was prevented from surveying the above entry by
the Indians, who were very troublesome, and who
rendered the execution of such business difficult and
dangerous; that, during this time the defendant pro-
cured a survey to be executed of the entry made in
his name by the complainant, and obtained a patent for
the same. The bill admits that the complainant receiv-
ed a sum of money from the defendant, which, how-
ever, he charges as paid on account of the expenses
attending the locating and surveying the said entry,
and not as a compensation for his services. The
prayer of the bill is, for a conveyance of one-third part
of the above-mentioned tract of 25,000 acres of land.
It appears by the exhibits in the cause, that the above
entry was surveyed on the 28th October, 1786.

The defendant states in his answer, that previous-
ly to his employing the complainant to locate and
survey his warrants, he received offers from other
persons to do the business upon the terms stated in
the bill, which he rejected, and that he was induced
to authorize his friend, Mr. Webb, to place the war-
rants in the complainant's hands, in consequence of
his having understood that he would undertake the
business for a fair compensation in money. That
Mr. Peachy, the agent of the defendant, paid to the
complainant upwards of 7,000 pounds of tobacco,
within a few months after the entry was made. The

answer farther states, that the defendant frequently applied to the complainant to have the entry, which he had caused to be made, surveyed; and that, after repeated promises to comply with these demands, made and broken, the complainant confessed it was not in his power to execute the business, and after claiming the tobacco, which he had received as a compensation for his services, advised the defendant to apply to some other person to attend to the surveying of the entry. The defendant owns, that from the year 1785, when this advice was given, until some time after he claimed his grant, he was frequently in company with the complainant, who, to the best of his recollection, never intimated that he expected to receive any part of the lands, nor was any such demand ever made by the complainant until the institution of this suit, in 1794.

There was an amended bill filed in this cause, and the above answer was, by the agreement of parties, received as an answer to this bill. The amended bill states, that the entry of the 25,000 acres of land was made by the intervention of a Mr. Shelby, a particular friend of the complainant. That the defendant caused the said entry to be surveyed without consulting the complainant on the subject, although he avers, that he was always ready and willing, whenever he might have been called upon for this purpose, to show the beginning and other calls of the entry, and to give the necessary directions to the surveyor.

The depositions taken in the cause prove, that at the time when the entry was made, it was usual in Kentucky for the locators of lands to receive from

the owners, as a compensation for their services, a proportion of the land so located, beside the expenses which might be incurred in surveying the land, which the locator received from the owner in money. But what that proportion was, is not precisely ascertained by any of the witnesses. They state, generally, that it was sometimes one-third and sometimes one-half. Mr. Peachy, the agent and attorney in fact of the defendant below, from the year 1780, when the defendant went to the West-Indies until his return, states, that he had lands located in Kentucky, for a part of which he allowed the locator one-fifth, and for the residue one-tenth, of the land located, as a compensation for his services, beside paying the expenses of surveying, &c. This witness farther states, that he never heard or understood, in conversation with the complainant, the defendant, or Mr. Webb, with whom the defendant deposited his warrants to be delivered to the complainant, that the defendant was to give any part of the land in consideration of locating the same.

The circuit court decreed, that the defendant below should convey to the complainant one third of the said tract of 25,000 acres of land, according to certain boundaries which had been previously laid down under an order of that court, from which decree the defendant appealed.

Mr. Justice WASHINGTON delivered the opinion of the court.

In deciding this case we are necessarily led to the examination of the following questions: 1. What

was the contract between these parties, the specific execution of which is sought to be enforced by this bill, and how is it proved ?   2. Has the complainant entitled himself to ask for an execution of the contract, in case the same should be sufficiently proved ?

The amended bill states that the complainant received certain land warrants from the defendant with instructions to locate the same in Kentucky, but that no particular stipulation was made respecting the compensation which he was to receive for his services, except that the general custom of the country in similar cases, and the general tenor of the complainant's contracts with other persons for such services were to furnish the rule of compensation to be allowed to him. This rule is averred to be one-third of the land located.

The defendant, in his answer, states, that no contract of any sort was entered into between the complainant and himself. He even denies that he had any conversation with the complainant on this subject at any time previous to the entry being made. He states that offers were made to him by other persons to locate his warrants on the terms mentioned in the bill, which he rejected, and that, in consequence of his having understood that the complainant would do the business for a fair compensation in money, he deposited his warrants with his friend, Mr. Webb, with a request that he would engage the complainant to locate them.

The allegations of the bill in relation to this contract are wholly unsupported by the evidence in the cause ; and, on the other hand, the answer, in relation to this point, is strongly corroborated by the testi-

mony of Mr. Peachy; by the uncertainty of the alleged usage as to the proportion of the land to be allowed to the locator; the improbability that so loose a contract would be made so early as the year 1779, when a usage, if any existed, must necessarily have been recent and unknown, especially to persons living remote from Kentucky, at that time wild and unsettled : and, above all, by the circumstance, that from the year 1786, when the survey was made, under the direction of another agent, no demand of a part of the land appears to have been made by the complainant until the institution of this suit in the year 1794.

This defect in the proof would seem to be fatal to the pretensions of the complainant. The contract which is sought to be specifically executed ought not only to be proved, but the terms of it should be so precise as that neither party could reasonably misunderstand them. If the contract be vague or uncertain, or the evidence to establish it be insufficient, a court of equity will not exercise its extraordinary jurisdiction to enforce it, but will leave the party to his legal remedy.[a]

a See, as to agreements, the performance of which will not be decreed by a court of equity for want of *certainty*, the following cases: Elliot v. Hele, 1 *Vern.* 406., 1 *Eq. Cas. Abr.*, 20. Bromley v. Jefferies, 2 *Vern.* 415. Emery v. Wase, 5 *Ves.* 849. But the court will, if practicable, execute an uncertain agreement by rendering it certain. Allen v. Harding, 2 *Eq. Cas. Abr.* 17. So an agreement to sell at a *fair valuation*, may be enforced. Emery v. Wase, 5 *Ves.* 846. Milnes v. Gery, 14 *Ves.* 407. And if the terms of an agreement are to be ascertained by an award, being so ascertained, that agreement will be enforced in equity, if there

But if these objections could be surmounted, that which remains to be considered under the second head, appears to the court to be conclusive against the appellee.

2d. Has the complainant entitled himself to ask for an execution of the contract if he had proved it?

It is very obvious, from the complainant's own showing, that the contract between himself and the defendant, taken in connection with the alleged usage, was, that the former should not only make the entry, but should also cause the same to be surveyed under his direction and superintendance. It was the entry and the survey which constituted the location in the contemplation of the parties, and formed the real consideration for which the allowance of a part of the land to the locator was to be made. The complainant states, in his bill, that the owner of the warrants was bound by the usage not only to make this allowance, but was also to furnish all the

is any thing to be specifically performed; as estates to be conveyed, &c.: but where the parties have contracted that the value of their respective interests shall be ascertained by arbitrators, or an umpire, if the acts done by the parties for the purpose of carrying their agreement into effect by an award, are not valid at law, as to the time, manner, or other circumstances, the agreement cannot be enforced in equity; unless there has been acquiescence, notwithstanding the variation of circumstances; or the agreement evidenced by such award has been part performed. Blundell v. Brettargh, 17 *Ves.* 232. And if on a covenant to build a house, the transaction is, in its nature, loose and undefined, and it is not expressed distinctly what the building is, so that the court could describe it as a subject for the report of the master, a specific performance will not be decreed. Mosely v. Virgin, 3 *Ves.* 185. Vide *ante*, p. 302, note (d.)

money necessary for locating and surveying the land, and he endeavours to excuse himself for not having caused a survey to be made. Now, if the mere making of the entry amounted to a full performance of the contract on the part of the locator, any stipulation with the same person for the expenses attending the survey would have been idle and unnecessary. But the evidence of Isaac Shelby, upon this point, is conclusive. He states, that the usual compensation to a locator was one-third of the land for locating and *directing the survey.*

If this, then, be the contract, as alleged by the complainant himself, in what manner has he performed his part of it? In the first place, the entry was made, not by him, but by Isaac Shelby, under some agreement which is not disclosed in the bill, nor proved by any testimony in the cause. In the next place, it does not appear that, from the year 1780, when this entry was made, the complainant made one effort to have the entry surveyed; but the defendant, after wasting about 6 years, was compelled to employ another agent to have that service performed.

How does the complainant excuse himself for the breach of his contract in this respect? He alleges, that he was prevented, during all that time by Indian hostility, which rendered it troublesome and dangerous to make surveys in the part of the country where this entry was made. This assertion is not proved by a single witness except Thomas Allen, who deposes, that from 1780 to 1789, he believes it was difficult to get any persons to risk their

lives in making surveys on the Ohio, towards the Yellow Bank, except for high wages, as he has been informed. Now, even if this witness had positively proved the point for which he was examined, still his testimony could not avail the complainant, since he admits, that for high wages men could have been procured to perform the service; and those wages, it was incumbent on the complainant, who claims no less than between 8 and 9,000 acres of this land, to pay. The difficulty and expense which would have attended his endeavours to perform this part of his contract, afford no excuse for his breach of it, even if, in a case like this, any excuse could be admitted. But what is conclusive as to this point is, that the entry was in fact surveyed in 1786, without any danger or difficulty, so far as the record informs us.

The complainant alleges, that he was always ready and willing, whenever he might have been called upon for that purpose, to show the beginning and other calls of the entry, and to give the necessary directions to the surveyor. This allegation is positively denied in the answer, which states, that the complainant declined making or attending to the survey, and that he advised the defendant to employ some other person to do the business.

Thus it appears, that the complainant has failed not only to prove the contract stated in the bill, but also, his performance of those acts which formed the consideration of the alleged promise on the part of the defendant.

The decree must therefore be reversed, and the bill dismissed with costs.

Decree reversed.