## Lacey's Heirs *vs* McMillen.

ERROR TO THE HARRISON CIRCUIT.

*Rescission of Contracts.*

JUDGE GRAHAM delivered the opinion of the Court.

CHANCERY.

*Case* 122.

*September* 24.

Case stated.

AFTER the death of Benjamin Clark, his lands were divided among his heirs. Three tracts, one of 404 acres, one of 141 acres, and one of 112 acres were allotted to the wife of McMillen. In February, 1817, McMillen sold to Walter Lacey, (who was husband of another of Clark's daughters,) the lands so allotted to his wife, and by a written obligation, undertook that he and his wife would convey the land thus sold, on or before the 28th February, 1818; said conveyance, when made, "passing to Lacey the title that was vested in them, as heirs of Benjamin Clark, deceased." As the consideration of this sale, Lacey gave his three bonds, payable at three different periods, for about eight thousand dollars. The first two were paid in full, and the last, for $2,300, (which was payable on the same day that the deed was to be made,) was paid in part. Lacey took possession of the land. After this, Mrs. McMillen gave birth to a child, and died. That child, a daughter, has grown up to mature age, and married. Walter Lacey died in the year 1833. In January, 1841, his heirs and administrator exhibited their bill in chancery, in which they allege that, by reason of the death of Mrs. McMillen, her husband has now but a life estate in the land, and no conveyance having been made, he is now unable to convey a title to them. They conclude by asking the Court "to rescind and set aside said contract of purchase, and order and decree the defendant, McMillen, to pay back and refund, with interest, the consideration money paid by their ancestor." McMillen, by his answer, insists that Walter Lacey might have obtained the deed during the life of Mrs. McMillen, and would have done so, if he had paid, as

he was bound to do, the purchase money. The title bond of McMillen to Lacy, has endorsed upon it "credit, June 11, 1824, by one hundred and twenty four acres of land." The complainants call on the defendant to explain that credit, and in response he says: that Walter Lacey sold a part of the 404 acres, to-wit: about 72½ acres to Warder, and 51' or 52 acres to Burgess, and the purchasers becoming dissatisfied with the state of the title to said land, he, at the request of Lacey, repurchased from Warder and Burgess, and thereby released Lacey from his obligation to them, and in consequence of that arrangement, Lacey gave the defendant the credit endorsed on the bond. Commissioners, by order of Court, estimated the rents, improvements, &c. At September term, 1846, McMillen filed an amended answer, in which he states that he is informed that Thomas Bodley held the legal title to a large portion of the tract sold by him to Lacey, and that after Lacey had obtained possession of the tract, Bodley conveyed to him the legal title to a large portion thereof. He charges that Lacey has, of the land so purchased by him of the defendant, sold sixty acres to Maids, and forty acres to Willoughby, and one hundred and twenty four acres to Wearn, and these purchasers, or those claiming under them, are in possession of their land so purchased. The proof substantially establishes the foregoing state of facts set forth in the defendant's amended answer. Some two or three sets of commissioners were appointed to assess, and did assess, the value of rents, improvements, &c. and a large mass of proof was taken on these subjects; but the subsequent action of the Court and parties, renders it now unnecessary to advert to that proof, or to the report of the commissioners upon it.

The suit coming on for final hearing at September term, 1848, "the complainants made their election to retain the tract of land conveyed to their ancestor by Bodley and wife, and prayed the Court to decree a rescission of the contract, as to the other tract mentioned in their bill." The Court thereupon dismissed the complainant's bill without prejudice, and at their costs.

They have brought the case to this Court, and now insist that the Court should have permitted them to retain the tract conveyed by Bodley, and should have rescinded the contract as to the residue of the 404 acre tract, after deducting the amount credited on the bond. This constitutes the most important question in the case.

It is a general rule that a party cannot, in equity, seek a rescission of a contract, unless the parties can be placed in *statu quo,* or nearly so: (3 *Marshall,* 180.) It appears, in this case, that Lacey made some payments after Mrs. McMillen's death; and after he was well aware that it was then out of McMillen's power to convey, he sold and conveyed important and valuable portions of the land to others, looking, no doubt, to a confirmation of his title by the daughter, when she should arrive to the age of twenty one. By acting upon the contract, after full knowledge of his equitable right to a rescission, and transferring to others the possession of such large portions of the land, he has put it out of his power to place McMillen in *statu quo:* (4 *Mon.* 85; 3 *Mar.* 180.) He lived until the year 1833, say fifteen or sixteen years, in the possession and use of so much of the land as he had not sold, and did not seek a rescission. His heirs do ask a rescission, and yet, on the trial, refuse to re-convey a considerable portion of the land. It is urged, however, that a purchaser may sometimes claim a confirmation as to part, and a rescission as to the residue.

In the attitude in which the parties are presented in this case, and from the facts appearing in this record, it may well be doubted whether this can be properly regarded as one of such cases. Here the vendee, after the death of Mrs. McMillen, and with full knowledge of the inability of McMillen to convey the title, made additional payments, has sold and conveyed to others a very large portion of the land, continued for more than fifteen years in the possession and undisturbed use and enjoyment of the land, and since his death in 1833, his heirs have so continued, until the commencement of this suit; and now, when they exhibit their bill, near fifteen hundred dollars of the principal of the price re-

The general rule is, that the Chancellor will not rescind a contract unless the parties can be placed in *statu quo* or nearly so.

The party who acquiesces for a great length of time, in his purchase, after he is apprised of all the facts upon which he asks a rescission, will not be relieved.

mains unpaid. They are not only unable, but are in fact unwilling to restore a valuable portion of the land. Under such circumstances, they are not in a condition to ask a rescission: (2 *Wheat.* 336; 6 *Wheat.* 528; 4 *Dana*, 197; 5 *J. J. Marshall*, 27; 4 *Monroe*, 85.)

The Court dismissed their bill without prejudice. The decree, therefore, will not preclude them from remedy, should any thing hereafter arise to make it necessary to appeal for redress of injury to a Court of law or of equity. Should any eviction hereafter take place, or any other event happen to justify it, then they can seek and obtain the appropriate relief. At present we do not perceive that there is any necessity for, or propriety in, granting the prayer for partial rescission.

Nor is there any just cause of complaint as to costs. The object of the bill, and its only specific prayer, was a rescission of the entire contract. An enquiry into rents, profits, improvements and waste, was apparently necessary and indispensable at the time when such proof was taken.

Upon the whole case, the decree of the Circuit Court is, therefore, affirmed.

*Boyd* for plaintiffs; *Robertson and Trimble* for defendant.

