By tfie Court

Jenkins, J.,
delivering the opinion.
This is a bill for specific performance of a contract for the sale of real estate, praying an injunction to restrain the vendor, pendente lite, from selling the land to any other party. The injunction was granted, but subsequently dissolved, on motion of defendant, after answer; and it is to the order dissolving it that exception is taken. The dissolution of the injunction is resisted on these grounds: 1st. The vendee had made a partial payment of the consideration money. 2d. That he had entered into possession of the premises. 3d. That he had tendered payment of the purchase money, and demanded a title, which had been refused. *127 4th. That the vendor was insolvent, by reason of which the vendee would be remediless at common law.
1. Partial payment, under the circumstances of this case, entitles the party making it to no favor in a Court of equity. By the contract full payment was to be made March 1st, 1861, the vendor casually remarking to the vendee that the money was to go to one Lawton, of Savannah. In the spring of 1861, instead of making payment or negotiating with vendor for an extension of the credit, the vendee went to Lawton (without authority from the vendor) and asked indulgence, which was granted upon the condition of the vendee paying interest due upon vendor’s debt to Lawton. And this is the partial payment relied upon for the interposition of equity. It is true the bill contained an averment that after the transaction with Lawton the complainant communicated it to the vendor, who said it was satisfactory. But this is explicitly denied in the answer. Partial payment is sometimes relied upon to take a case of parol sale of land out of the operation of 29 Charles II, but that is not this case, for the contract was in writing. It can only avail the vendee here as evidence that time was not of the essence of the contract, and that the vendor, by accepting partial payment after the time fixed for fall payment, had waived the vendee’s default and reaffirmed the contract. But no such consequences can result from the payment to a stranger without the knowledge or consent of the vendor, and not subsequently ratified or adopted by him. His casual remark, aside from the written contract, that the purchase money was going to Lawton, did not justify the vendee in ignoring the vendor, and negotiating with Lawton. .A material modification of the contract, so far from being the foundation of an equity against the vendor, it was a wrong done him.
2. Whether or not possession of the premises by the vendee after the contract be a ground for specific performance, and of course for inj unction pendente lite as ancillary to it, depends upon how the possession was obtained, and its true character. The mere possession of the land contracted for will not be deemed a part performance if it be obtained wrongfully by the vendee, or if it be wholly independent of the contract. So if the vendee be a tenant in possession under the vendor, for his possession is prop *128 erly referable to his tenancy, and not to the contract: 2 Story’s Equity, 763, and numerous authorities cited in note 1. In this case the contract expressly provided that the possession should remain in the vendor until the day of payment. Complainant’s allegations relative to possession are very general, but the defendant’s response to them is very specific. He states that subsequently to the contract complainant went into possession by his consent, and subject to his will,.and that by his will the possession had been terminated before the filing of the bill. It therefore does not at all strengthen the complainant’s bill for injunction.
3. As to the tender of payment, the responsive statements of the answer show that no offer of payment was ever made until about the time of the filing of the bill, and that was an offer to pay in “ the common currency of the country.” It was the legal right of the vendor to demand payment in specie, and such payment was refused. But this is not all; more than two years had elapsed since the payment became due. During that time it was a matter of history that there was but one “ common currency ” in Georgia, which was, by force of circumstances, in a course of depreciation. At the time of the offer to pay, (February, 1863,) it was greatly depreciated, and rapidly declining in value.
There is, as regards time, a remarkable coincidence between the delay of payment and the depreciation of the “ common currency,” and equity revolts at a claim for its interposition, based upon the tardy offer, in that specific medium. As to laches, see 2 Story’s Equity, 771; 2 Wheaton, 336.
4. The complainant relies upon the fact that he will be remediless by reason of the insolvency of the vendor unless a complete remedy, by specific performance, be given him. There are two aspects in which he may lose: 1st. He may fail to realize the anticipated gains of the purchase. 2d. He may lose the payment made to Lawton. As to the first, it may be replied that the loss, if any,'is attributable directly to his failure to comply with the contract. The insolvency of the defendant might entitle a blameless vendee to relief in a form otherwise denied him, but it cannot revive a right lost by his own culpa *129 ble laches, ora positive infidelity to the contract. We have already remarked that complainant’s payment to Lawton was a wrong done to the defendant, and he can derive no benefit from it. But it appears from the correspondence exhibited to defendant’s answer, that he offered to refund to complainant the money so paid if the latter would account to him for the rent of the land whilst he occupied it by defendant’s permission. We are satisfied, after careful examination of the case, that the injunction was properly dissolved, and therefore affirm the judgment.
Let the judgment be affirmed.