## TRIUMPH ELECTRIC CO. v. THULLEN.

(District Court, E. D. Pennsylvania. August 10, 1915.)

### No. 1143.

1. SPECIFIC PERFORMANCE ⟨key⟩1, 4—CONTRACTS ENFORCEABLE—GROUNDS.

A party seeking specific performance of a contract, and asserting a breach by the adverse party to the contract, must, to obtain relief, show that his right is so clear that the denial of it by the adverse party affronts against good conscience, and calls for a decree prayed for, and that the party has no other adequate remedy, though formal technical grounds of equitable jurisdiction exist.

[Ed. Note.—For other cases, see Specific Performance, Cent. Dig. §§ 1, 4; Dec. Dig. ⟨key⟩1, 4.]

2. MASTER AND SERVANT ⟨key⟩62—CONTRACT OF EMPLOYMENT—ASSIGNMENT OF PATENTS.

A contract of employment, terminable at the will of the employer, bound the employé, while in the employ, "in the event of any design by him capable of being made the subject-matter of a patent," to assign the application and patent to the employer; but the agreement to assign should not apply to any patentable design which the employer might discover, not applicable to the line manufactured by it. The employé was discharged, but before his discharge he had perfected an invention and had applied for a patent. The shop work involved was done by the employer at the employé's expense. The expense of securing the patent was paid by the employé, and the patent was issued after the termination of the employment. The purpose of the invention was to automatically control electric motors. The employer was a manufacturer of generators, or dynamos, and motors. It bought from others the control apparatus, and what it manufactured and what it bought were sold together as units. Some years before the employment the employer had manufactured control apparatus, and after the termination of the employment the employer made switchboards for use with generators. *Held*, that the contract, interpreted in the light of conditions existing when made, did not bind the employé to assign to the employer the patent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 71; Dec. Dig. ⟨key⟩62.]

In Equity. Suit by the Triumph Electric Company against Louis H. Thullen. Heard on bill, answer, and proofs. Specific relief prayed for denied, with leave to plaintiff to have the cause transferred to the law side of the court, or for relief under the general relief prayer. See, also, 209 Fed. 938.

⟨key⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Henry N. Paul, Jr., of Philadelphia, Pa., and Edwards, Sager & Wooster,. of New York City, for plaintiff.

Furth, Singer & Bortin, J. Bonsall Taylor, and E. Hayward Fairbanks, all of Philadelphia, Pa., for defendant.

DICKINSON, District Judge. The purpose of this bill is to enforce specific performance of a contract. The contract is one between an employer and employé. The decision of the case involves a finding of the rights acquired by the employer in an invention made by the employé.

The defendant is an engineer of experience, possessing the ability called for by the position he filled. He entered the plaintiff's employ November 22, 1909, under a contract of that date, which is the basis of the plaintiff's claim of right. During the time of his employment he conceived the idea of an improved apparatus for automatically controlling electric motors. Letters patent did not issue until August 19, 1913. The application and grant of letters patent having come to the notice of the plaintiff, it demanded to have the patent assigned, and, upon defendant's refusal, has filed this bill. The pertinent provisions of the contract upon which this demand is based are that the defendant would devote himself to the interests of the plaintiff, and "while in its employ, in the event of any design being capable of being made the subject-matter of a patent application, such application and patent shall be assigned to the company."

The defendant denies the plaintiff's claim of ownership of this invention. This denial is based upon a further provision of the contract that the agreement to assign did not apply to "any patentable design" which the defendant might "discover, not applicable to the line manufactured by" the plaintiff, and the asserted fact that this invention is outside of the employer's line of manufacture. There is a further denial of plaintiff's right to the equitable remedy invoked by this bill, on the ground that this is a deprivation of defendant's right, confirmed by the act of Congress, to have the facts, from which the legal rights of the parties flow, tried at law, and that neither the relations of the parties nor the certainty of the contractual obligations of the defendant are such as to confer upon plaintiff the right to the extraordinary relief sought.

[1] The case is of that type in which the opposing positions of the parties may each be plausibly supported by arguments based upon general principles and by a reference to precedents. On the whole, however, it seems the more satisfying conclusion to refuse the interposition of a chancellor and leave the parties to the assertion of their legal rights. In the first place, the case is one of an asserted breach of contract. This suggests an action for damages. A right springing from contract may be so clear that the denial of it by a defendant may be an affront to good conscience and call for a decree to enforce its performance. It may further be that no other remedy will answer the ends of justice. Each of these grounds of chancery jurisdiction implies an exception to the general rule. The first recognizes that the existence of the right withheld must clearly appear, and the act

of withholding must have in it something of the element of the unconscionable. The latter is dependent upon the former, although it may go also to the measure of redress and the ascertainment of the amount.

It must, of course, be admitted that formal technical grounds of equitable jurisdiction here exist. The title asserted is an equitable title, and the relief prayed is through a purely equitable remedy. The basis of the whole case is none the less, as already stated, a contract and its averred breach. It is not enough that a court of equity has jurisdiction and a chancellor the power to interfere. No complainant can successfully assert a right to such interference. A litigant has a right to his action at law. He has none to equitable relief through chancery forms. The most he has is a justified expectation that a chancellor will grant such relief, if grounds for it exist. The legal right, as has been stated, must be shown. In some cases, if his right is doubtful, he must first establish it at law. Even then more is required of a complainant than the mere possession of a legal right. If that is all he has, he is left to its assertion. Before a decree in equity will be awarded, the defendant must be convicted of an offense against equity, or the plaintiff be without other adequate remedy. These doctrines have the sanction of abundant authority, recognition of which is given in Dalzell v. Dueber, 149 U. S. 315, 13 Sup. Ct 886, 37 L. Ed. 749, Root v. Railway Co., 105 U. S. 189, 26 L. Ed. 975, and Colson v. Thompson, 15 U. S. (2 Wheat.) 336, 4 L. Ed. 253.

[2] What are the facts here? The parties had a contract of employment which the defendant thought gave him the right to employment for a year. The plaintiff treated it as an employment at will and discharged the defendant. The latter then brought his action. The court held the employment to have been terminable at will and and entered judgment accordingly. Before his discharge the defendant had perfected the invention now claimed by plaintiff and had applied for letters patent. The shop work involved was done by plaintiff at defendant's expense, a bill for which was rendered and paid. The expense of securing the patent was likewise paid by defendant. The patent issued after the employment had ended. The general purpose to be met by the invention is to automatically control electric motors. Its operation in connection with electrically driven feed carriages for saws will show its claim to utility. It is apparent that, when the substance to be sawed presents a large section through which the cut is to be made, it should be fed to the saw more slowly than when a relatively small section is presented. By means of the system of control which the defendant invented, the speed is regulated by coupling the action of the motor which drives the saw with the action of the motor which propels the carriage, so that as the load on the one is increased the speed of the other is decreased. There is a like related action in reverse. This system of control is especially "applicable"—to quote the phrase in the contract—to feed carriages for saws. It is not, however, limited to such use, but in the words of the application is a "control system for electric motors."

The business of the plaintiff is to manufacture generators, or

dynamos, and motors. It manufactured motors to drive all kinds of motor-driven machinery. It furnished to its customers the means of supplying themselves with electric power, and of applying that power to the driving of machinery or other applied use of electric force. The motors were furnished ready for use. This included all auxiliary devices, for applying, releasing and regulating the current. A general word which is expressive of their different functions (beside its use as a technical engineering term) is the word "controller." In their more technical sense the terms applied to such apparatus are starters or controllers, when referred to motors, and rheostats, when used with generators. A number of years before this contract was entered into, the plaintiff had made these devices. Afterwards, for commercial reasons, it purchased them from others. Just before 1909 it had made a starter for an alternating current motor, and the manufacture of this was continued. It also supplied and has since manufactured switchboards, which may be part of what may be termed the generator unit in use. The plaintiff's business was also to repair and overhaul and to act as a trouble finder and remover for any of their customers who met with difficulties in operating machines driven by electricity. The evidence, however, justifies the finding that this division or classification of the business of the plaintiff was recognized. It manufactured generators and motors. It also bought from others the control apparatus which went with them. What it manufactured and what it bought, it is true, were then sold together as units, but the distinction notwithstanding existed.

This prelude, which has been already unduly lengthened, brings us to the query of whether the invention of such auxiliary devices is within the terms of this contract. In the effort to find the meaning of the contract, we have the fact that the language employed is that of the plaintiff. The pivotal point is the thought meant to have been expressed by the concluding sentence. After the event, criticism of what was done before is never gracious and seldom just. We do not mean it as a criticism, but merely note the circumstance that, in view of the controversy which has arisen, the words used in the sentence quoted were not happily chosen. Was it intended that patents relating to control apparatus should be the property of the plaintiff, or was its ownership to be limited to generators and motors? In the light of the distinction between control apparatus, which it bought, and generators and motors, which it manufactured, the use of the latter word at least introduces an ambiguity.

The mere reading of the contract would call for a broader view of it. Indeed, the distinction adverted to, when first suggested to the mind, seems almost finical. We have been compelled, however, to make the finding from the testimony of the chief witness for the plaintiff. His testimony was not only frank and candid, but clear-cut as well. He seems to have been impelled to state the distinction by his transparent truthfulness. He should be given further credit for appreciating the at least possible value of the fact, because he stated also that some years before the defendant was employed the company had manufactured control apparatus, and after the relations be-

tween the company and the defendant had been severed it had made switchboards for use with generators, and has continued to manufacture them. It is clear, however, that the contract must be interpreted in the light of conditions existing when it was entered into.

We do not feel called upon to interpret this contract further than to state the conclusion reached that we cannot find it was the intendment of the defendant that patents relating to control devices. as distinguished from generators and motors themselves, should be assigned to plaintiff, and, in the absence of such a finding, we must refuse the specific relief prayed for, which is to enter a mandatory order that the defendant assign this patent to plaintiff.

We do feel called upon to state, however, that the evidence introduced by each of the parties tending to impeach the good faith of the other has failed in its purpose. There is no occasion to discuss it in detail, nor to refer to the interpretation which each side to the controversy is wrongly asserted by the other to have placed upon this contract inconsistent with the one now advanced. The view of the case above expressed would call for a decree dismissing the bill under the former equity rules. The case is, however, within the spirit of rules 22 and 23 of the present rules. Further than this, there is a prayer here for general relief. No other decree than specific performance has, however, either been asked for or discussed, and we do not feel free to make it.

The disposition now made of the case is to grant leave to plaintiff to ask to have the case transferred to the law side of the court, or for relief under its general relief prayer. If no such action is taken within 30 days, defendant may submit a decree in accordance with this opinion. It should, perhaps, be added that the decree of the court awarding a preliminary injunction, of which we have been reminded, was confined to preserving the rights of both parties, and a construction of the contract was expressly withheld until final decree.