ELIZA FOSTER AND WILLIAM A. FOSTER, her husband, Appellants, *vs.* ROBERT KIMMONS AND NANCY HANNAH KIMMONS, Respondents.

1. *Equity—Contracts—Certainty—Specific performance.*—A Court of Equity will not decree the specific performance of a contract, unless it is established with reasonable certainty, having regard to its subject matter and to the circumstances under which, and with regard to which, it was entered into.

### Appeal from Greene Circuit Court.

*James F. Hardin*, for Appellants.

I. Evidence can only be excluded for incompetence or irrelevance.

II. Where there is any evidence tending to prove the facts there must be a finding on the evidence. (The other points made are necessarily omitted not being considered by the court.)

*Nathan Bray*, for Respondents.

I. This contract being within the statute of frauds, every material fact in the petition in relation to the gift, and its terms, acceptance, and the possession, and improvements, under that gift must be proved so as to leave no room for reasonable doubt as to the facts relied on. (Johnson vs. Quarles, 46 Mo., 423; Baker vs. Vining, 30 Me., 121; Malin vs. Malin, 1 Wend., 625; Sewell vs. Baxter, 2 Md. Ch., 447; Hollida vs. Shoop, 4 Md., 465; Boyd vs. McLean, 1 Johns. Ch., 582; Enos vs. Hunter, 9 Ill., 211; 1 Sto. Eq. Jur., § 753.)

II. In such cases it is a proper practice to move to exclude the evidence and dismiss the bill.

III. There was no sufficient proof as to the identity of the land.

VORIES, Judge, delivered the opinion of the court.

This action was brought in the Lawrence Circuit Court, and afterwards moved to the Green Circuit Court by a change of the venue.

The action was brought to compel the specific performance of a parol gift of land, on the ground of part performance by

the delivery of possession and valuable improvements made on the land.

The action was originally brought by the plaintiff, Eliza Kimmons, who afterwards intermarried with William S. Foster, after which the suit was prosecuted in their joint names.

The petition charges, that the defendant, Robert Kimmons, the father of Edward Y. Kimmons, gave the said Edward certain lands, which were described in the petition by metes and bounds, lying and being in Lawrence County, State of Missouri; that by virtue, and in pursuance, of said gift the said Edward took and continued in the possession of said land until the 23d day of August, 1858, at which time he died; that after said gift and before the death of said Edward, he made permanent and lasting improvements on said lands by clearing and fencing portions of the land and erecting buildings thereon to the value of five or six hundred dollars; that during all of this time he claimed and used the land as his own with the knowledge and consent of his father, Robert Kimmons; that plaintiff, Eliza, was the wife of said Edward at the time of his death, and said defendant, Nancy H. Kimmons, was the only child and heir of the said Edward and is now six years old; that the plaintiff, Eliza, as the widow of said Edward, elected under the statute of this State to take a child's part of the real estate of the deceased in lieu of other dower therein; that, shortly after the death of the said Edward, the said Robert Kimmons forcibly took possession of the said lands and still holds the same, and fails and refuses to convey the legal title of said land to said Eliza and defendant, Nancy H. Kimmons; that the said Robert Kimmons is destroying the timber on said land; and prays for a decree compelling the said Robert to convey the land to said Eliza and Nancy H., and for general relief.

A guardian *ad litem* was appointed for the infant defendant, who filed an answer asking the protection of the court for the infant.

The defendant, Robert Kimmons, by his answer denied the gift of the land to his son as charged, or that he ever took

possession of the land in conformity to any supposed gift, or that said Edward made the improvements on the land as charged in the petition, but avers that the improvements on the land were made by said defendant, and that said Edward occupied the land by the permission of the defendant, and that he so occupied the land and worked the same for his own use as a compensation for work done by him in improving the same. The defendant denies, that the said Edward ever claimed the land as his own. The defendant further stated in his answer, that, since the commencement of the suit, he had for a valuable consideration sold and conveyed the land to one Isaac West, and that West had sold and conveyed to one Oliver P. Johnson, who was then in possession of the land, &c.

On the hearing of the cause it was proved by one R. B. Nicholas (who was the father of the plaintiff Eliza), that he had been well acquainted with the defendant, Robert Kimmons, for twenty years; that Edward Y. Kimmons and his brother Wash Kimmons, two of the defendant's sons, had each married a daughter of witness; that Edward Y. had been twice married, and that defendant, Nancy H., was the only child of his first wife; that his last wife had no children; that in the year 1855, and perhaps before the commencement of that year, the said Edward went upon and took possession of the land in controversy; that the land was then unimproved, except a small school house situated thereon; that Edward first moved into this school house in 1855, and continued in the exclusive possession of the land up to the time of his death in July, 1858; that, while he was in possession of the land, he made improvements in clearing and fencing land and in building a house thereon, to the value of from six to seven hundred dollars; that, during the time that he occupied the land, he claimed it as his own; that the defendant, Robert Kimmons, resided in one mile of the land, was frequently on the land, and saw Edward improving the same; that Edward married a daughter of the witness in the first part of the year 1858; that after this, witness was riding

over the land in controversy with the defendant, Robert, when he told witness that he had given the land to his son, Edward Y., and pointed out to witness where he supposed one corner of the land was, and where he thought the line would run, near a tree to the other corner, and he remarked, that he had made a division of his land among his boys, that he had given the Chalybeate Spring tract to Edward (the land, on which Edward resided, was called the Chalybeate Spring tract); that, after he had given the land to Edward, he had moved on it, and worked hard in improving it, and that he must make him a deed to it,or something might happen to one of them and cause trouble; that the old man also stated,that the land given Edward was not as good for farming purposes as that given to his son Wash, (who had married another of witness' daughters) but that he thought the spring would make it equal in value; the witness further stated, that Robert Kimmons, in another conversation with witness at his own house, stated, that he gave Edward the land at the time he moved on it in 1855 ; that he had made the improvements, and that he intended to make him a deed; that, after the death of Edward, witness administered on his estate, after which he had another conversation with Robert Kimmons, when he said that, because witness had administered on the estate, he would not make a deed to the land.

It was also testified by this witness, that he, since the death of said Edward, had the land surveyed, that the survey was made by his direction so as to include the land shown him by the defendant as the land given to Edward, and which is the same described in the petition ; that witness thought Edward made all the improvements on the land; that he had never seen defendant's negroes working there, nor any one except the hands employed by Edward.

There were several other witnesses, who testified that the defendant had told them during Edward's life-time, that he had given Edward the land, and that he would make him a deed. One of these witnesses stated, that he had applied to Edward to get some timber from the land, and that Edward

told him that the land belonged to his father, that he was only living on it to improve the land, and was to get what he could make off of the land for the improvements made. Another witness testified, that he had purchased some timber on the land from the defendant, and that he afterwards applied to him to get more timber, when he told him that he had given the land to his son Edward, and that he grumbled when he let persons have timber from the land; that witness must go to Edward. The same witness testified, that Edward had told him that the land in the bottom belonged to his father.

The plaintiff, Eliza, testified, that the defendant was at the house of Edward about one week before his death, when he told Edward that he had given him the land, and that he had done a great deal of work thereon, and, that the first time he could make it convenient, to come up to his house and he would make him a deed. It was also shown, that while Edward lived on the land, the defendant's negroes had been seen there clearing and fencing the land, which was afterward put in cultivation. It was also shown in evidence, that the said Eliza had elected to take a child's part of the property left by her husband in lieu of other dower.

The defendant offered no evidence.

At the close of the evidence on the part of the plaintiffs, the defendant, Robert Kimmons, moved the court to exclude from its consideration all of the evidence offered on the part of the plaintiffs, for the reason that said evidence failed to show with certainty for what specific land the alleged contract was made, and that the evidence failed to show that the improvements made were made under the faith and belief that the contract would be performed, and that the evidence discloses merely an executory gift with acts yet to be performed by the donor, and that no adequate consideration was shown.

This motion was sustained by the court, and the petition dismissed, and final judgment rendered in favor of the defendant. The plaintiffs at the time excepted to the ruling of the court, and filed a motion for a new trial, setting forth as grounds therefor the rulings of the court excepted to. This motion

being overruled, plaintiff again excepted and appealed to this court.

The practice adopted by the court below, by which this case was decided, is an unusual one. After the conclusion of the evidence on the part of the plaintiffs, the defendant moved the court to exclude from the consideration of the court all of the evidence in the cause for several reasons stated in the motion, from which it was insisted, that the contract as made out by the evidence could not be specifically performed by the court. The court sustained the motion, and dismissed the plaintiff's petition. This course was certainly unusual in practice, but, I suppose, the effect was the same as if the cause had been submitted on petition, answer and evidence, and the petition dismissed on the ground that the evidence was not sufficient to authorize or justify the court in rendering any decree in favor of the plaintiffs. The case will be considered with that view.

The plaintiffs, by their petition, ask for the interference of the court to compel the specific performance of a contract. The contract charged to have been made is a verbal gift of the land named in the petition, coupled with a delivery of possession of the land, and the making of valuable and permanent improvements thereon by the donee, which, it is insisted, takes the case out of the operation of the statute requiring contracts affecting the title to land to be in writing.

The jurisdiction of courts of equity over actions of this nature, and to decree a specific performance of verbal contracts concerning real estate under certain circumstances, has been exercised so long, both in England and in this country, that it is no longer to be questioned; but, as a general rule, in order to the exercise of such jurisdiction, it must be made to appear, that the contract to be performed is certain and fair in all its parts, is for an adequate consideration, and is capable of being performed, and, where the contract is not in writing, possession must have been delivered and taken in pursuance of the contract, and improvements made, or other acts done, in part performance, by which it is rendered impos-

sible or inequitable to place the parties in *statu quo ;* or to deny a specific performance would operate as a fraud on the other party, or in some cases where the contract is admitted by the answer.   (2 Sto. Eq., §§ 751, 755, 759, and authorities there cited.)

Mr. Fry, in his work on Specific Performance, says : "It will be obvious, that an amount of certainty will be required in the specific performance of a contract in equity greater than that demanded in an action for damages at law.   For, to sustain the latter proceeding, the proposition required is the negative one, that the defendant has not performed the contract, a conclusion which may be often arrived at without any exact consideration of the terms of the contract ; whilst in equity it must appear, not only that the contract has not been performed, but what is the contract which is to be performed.   It is, perhaps, impossible to lay down any general rule as to what is sufficient certainty in a contract ; but it may be safely stated, that the certainty required must be a reasonable one, having regard to the subject matter of the contract and the circumstances, under which, and with regard to which, it was entered into.   (Fry, Specif. Perform. [2 Am. Ed.], side page 102, *et seq.*)

In the case under consideration, the evidence shows, that the contract, which is asked to be specifically performed, was a gift of a piece of land, upon which is situate a celebrated spring ; that the defendant, or donor, had a larger tract of land at and constituting the spring tract ; it is not pretended that the whole tract of land was included in the gift ; no mention is made in the evidence of the quantity of the land given, either by referring to its legal sub-divisions, or otherwise. The only evidence, tending in that direction, is, that the defendant, while riding over the land, had pointed out to the witness a tree at a considerable distance, which he supposed was near where one corner of the land would be, and he had also stated the course which he supposed one line of the land would run. This is the only description given, while the evidence clearly shows, that the son, to whom the land is charged to have been

given, did not claim the whole of the spring tract. It is impossible, therefore, to ascertain from any contract or gift proven what part, or how much, of the tract was given or intended to be given; the only evidence being, that one line of the land was supposed to be near a certain tree, without anything to indicate the number of acres given, or where the other lines were, or were supposed to be. It must at once be perceived, that it would be impossible for a court of equity to specifically perform the contract, and know the very contract made, or intended by the parties, was being performed as to the quantity and boundaries of the land. The court would have to first make the contract, and then perform it. This a court of equity can never do. It follows, that the plaintiffs' petition was, for this reason, properly dismissed.

It is not requisite, that we should pass on any other points made in the argument of the case in the briefs filed by the parties as to the mutuality of the contract and the sufficiency of the consideration, as no sufficient contract has been shown.

The other judges concurring, the judgment is affirmed.