By the Court,
Hawley, C. J.:
This is an action of ejectment brought to recover thepossession of two small tracts of land, designated as lots numbers one and two (containing eighteen acres, more or less), being a portion of the land which plaintiff purchased on the twelfth day of November, a.d. 1873, by sale made under a mortgage executed by the Nevada Land and Mining Company, limited, on the twenty-ninth day of March, a.d. 1870, and recorded on the fourteenth day of July, a.d. 1870. Lot one contains about four acres.
The defendant claims the land in dispute under an alleged parol contract from said corporation to convey the premises to him. It appears, from the findings of the court below, that defendant, Lee, with full knowledge of the existence of the mortgage above-mentioned, on the eighteenth day of August, A.D. 1872, made a verbal agreement with one F. F. Osbiston, acting for said corporation, by the terms of which the defendant, Lee, was to pay, and did pay, the sum of one hundred dollars to said company, and took possession of lot one, “ and upon payment by defendant of a further sum reserved to be paid afterwards, said company agreed to convey to defendant the title to said land; that defendant continued in possession of said land from said eighteenth day of August, 1872, until its purchase by plaintiff, and ever *397 since tlien until the present; that after the entry of defendant under said agreement upon said land he made permanent and valuable improvements thereon, as stated in his answer, to-wit: of the value of five hundred dollars, and more, prior to the purchase by plaintiff of said land; that such improvements are permanent .in their character, and are a sufficient compensation to plaintiff for any damage that accrued prior to the commencement of this suit, by reason of defendant withholding said land to commencement of this suit; that defendant informed William A. Storry, the attorney in fact for the grantors'of plaintiff, of his verbal agreement with the Nevada Land and Mining Company for the purchase of lot one in Dunne’s north addition and the north extension of Yirginia street, adjoining said lot one, and of his part performance of said contract, and that defendant and said Storry then agreed verbally that said mortgagees would execute a deed and sell to defendant lots one and two for the consideration of five hundred and twenty-five dollars, to be paid in hand by defendant to the grantors of said plaintiff on the execution of said deed; that defendant, Lee, paid no part of said sum, took no possession of said land under said agreement, and made no improvements thereon under and by virtue of said agreement with said Storry; that on the day of the purchase by plaintiff from his grantors, through said Storry, their attorney in fact, plaintiff saAv defendant, and he told plaintiff of said verbal agreement Avith said Nevada Land and Mining Company of his possession and improvements thereunder of lot one and said north extension of Yirginia street, and that plaintiff then, verbally, promised defendant, in case he purchased the land in controversy, he would make it all right Avith defendant as to his purchase of said land from the Nevada Land and Mining Company, but that defendant never paid any sum, whatever, to plaintiff, took no possession of said land under such assurance, and made no improvements on said land under plaintiff’s assurance that he would make it all right Avith defendant as to said land, but defendant Avas simply left by said Storry and plaintiff in static quo in regard to said land, as they respectively find him.”
*398 Upon these findings of facts, the court rendered judgment in favor of plaintiff for the recovery of the land in controversy in this suit. From this judgment, and from the order of the court denying defendant’s motion for a new trial, the defendant appeals.
The plaintiff, by his purchase under the mortgage, became vested with whatever title the Nevada Land and Mining Company, limited, had on the day of the execution and recording of said mortgage, which was long prior to' the verbal agreements made with Osbiston and with Storry.
Unless said agreements were of such a character as to bind plaintiff, or unless plaintiff is bound by some verbal assurance made on his part at the time of his purchase, it is evident that defendant has no right to the possession of the land in controversy.
It is not pretended that plaintiff would be bound by the verbal agreements maíle by Storry or Osbiston, unless he had knowledge of their existence, and it does not appear from the findings of the court that he had any knowledge of the alleged contract of defendant with Storry for the purchase of lot two, or that he ever gave to defendant any assurance whatever that he would convey lot two to defendant, or make it all right with him in regard to that portion of the land. It is true that Lee testified that he showed plaintiff the boundaries of lot number two, and pointed out the identical ground in controversy in this suit, and that plaintiff promised that if he bought the land he would do the same by him as the English company had agreed to do; but the plaintiff, in his testimony, states positively that at the time he had the conversation in regard to the property, the defendant said: “He had no claims on anything except that four-acre piece.” In his testimony the plaintiff says: “At the time I made the purchase I did not understand Lee to claim anything except that block of four acres, or about that.” In another portion of his testimony he says: “I didn’t know he claimed anything but that four-acre lot, until he went to fencing it.” Upon cross-examination, he said that just prior to the purchase, Storry told him that Lee had a claim on the four-acre lot; that Lee “had no *399 rights whatever, although he had a claim from Dunne on the land he had purchased,” and adds: “I recollect asking Lee myself what title he had to the land, and he showed me a filing on a portion of section two of state land, * * * and also a receipt from Dunne or Osbiston for one hundred dollars that he had paid on block one.” When plaintiff was called upon to testify in rebuttal as to what was said at the time of his purchase of the land, the court asked him this question: “Did Lee, on that occasion, claim to be the purchaser of any other land than lot number one?” His answer was: “He claimed they had promised to sell it to him, but he had abandoned it. He did not claim to have any title to it before he went and filed on it as state land. He said that he had abandoned all his title from the' agents.”
There is other testimony in the record equally clear and positive on this point; but enough has been quoted to show that the court was justified in only finding that there was a verbal assurance upon the part of plaintiff as to lot one. This being true, it necessarily follows that as to lot two the defendant is a mere trespasser, and liable to be removed from the possession, in an action of ejectment, by the owner of the land. (Brown on Statute of Frauds, sec. 483.)
As to lot one, the plaintiff did promise, as stated in the findings, that in case he purchased the land, he would make it all right with defendant; that is, he verbally promised to do what the Nevada Land and Mining Company, through its agent, had agreed to do. From an examination of the evidence, as well as from the findings of the court, it is manifest that the defendant failed to establish any valid title to lot one.
The agreement of Osbiston was subject to the mortgage under which the plaintiff derived title. It was uncertain and indefinite as to its terms, and was not, in our judgment, such an agreement as could be enforced. But, if all the objections against the agreement made by Osbiston are waived, it is still very evident that the defendant is not entitled to recover the land upon the verbal assurance -made by plaintiff. It is not shown, or attempted to be shown, that defendant entered into the possession of the land *400 designated as lot one, or that he made any improvements thereon, or in any manner expended any money on the faith of the verbal assurance made by plaintiff. Moreover, the defendant does not allege, in his answer, that he has performed, or offered to perform, his part of the agreement, or that he is ready or willing to perform it; but he seeks to hold the land without paying the further sum of three hundred dollars, which he admits was to be paid before he was entitled to a deed. The testimony fails to establish the performance, or part performance, of the agreement upon the part of defendant in any particular whatever. It is true that Lee told the plaintiff once “that he owed three hundred dollars on the land, and that he was ready to pay it to whomsoever it belonged.” But he never tendered the money. The testimony upon the part of defendant, as well as on the part of plaintiff, sustains the findings of the court, relative to lot one, that defendant never paid any sum whatever to plaintiff, took no possession of said land, and made no improvements, under plaintiff’s verbal assurance to make it all right.
This finding is conclusive upon the point that there has been no such performance, or part performance, on the part of defendant as to constitute any valid defense to this action. We think the authorities cited by appellant fully sustain the conclusions we have reached. In fact, there does not appear to be any conflict in the authorities as to the legal principles applicable to this case.
The statute of frauds is intended for the protection of the respective parties to a parol agreement. Whenever one party, confiding in the integrity and good faith of another, proceeds so far in the execution of a parol contract that he can have no adequate remedy unless the whole contract is specifically enforced, then equity requires such relief to be granted; because, if the rules were otherwise the statute, which is designed to prevent fraud, would itself become an instrument of fraud; and hence it is that courts of equity in cases where a party has entered upon land and made permanent and valuable improvements thereon, under and'in pursuance of a parol agreement for its purchase, will enforce *401 the contract. But in all such cases it must clearly appear that the improvements were made with a view to the performance of the contract, and the governing rule invariably is “that nothing is-to be considered as a part performance which does not put thepartyinto a situation which is a fraud upon him, unless the agreement is fully performed.” (1 Story Eq. Jur. sec. 761.)
To entitle a party to take the case out of the statute of frauds, upon the ground of part performance of a parol contract, it is essential that the terms of the contract should be clearly and definitely established. (1 Story on Eq. Jur. sec. 764; Petrick v. Ashcroft, 4 C. E. Green, 339; Foster v. Kimmons, 54 Mo. 488; Allen v. Webb et al. 64 Ill. 342.) The acts of the party must, as stated by Story, “ clearly appear to be done solely with a view to the agreement being performed.” (Story Eq. Jur. sec. 762.)
It is also well settled that before the contract can be enforced, it must be shown that the party seeking its enforcement has performed, or offered to perform, or been ready and willing to perform, all the essentials of the agreement on his part. (Ery on specific performance of Contracts, sec. 608; Longworth v. Taylor, 1 McLean, 395; Colson v. Thompson, 2 Wheat. 336; Bates v. Wheeler, 1 Scam. 54; Goodale v. West, 5 Cal. 341; Brown v. Haines, 12 Ohio 1; Earl v. Halsey, 14 N. J. Eq. 332; Thorp v. Petit, 16 N. J. Eq. 488.)
If a party is in possession of land under a parol contract that is not valid either in law or equity, or if a party, after being admitted into possession under a valid contract to purchase, refuses to comply with his agreement, he is a mere trespasser, and liable to be removed by ejectment, at the will of the owner of the legal title. (Story Eq. Jur. sec. 761; Willard’s Eq. Jur. 285.)
The other questions argued by appellant -were settled by the former decision in this case, (Evans v. Lee, 11 Nev. 194) and will not be again discussed.
The judgment of the district court is affirmed.