## WALCOTT v. WATSON et al.

### (Circuit Court, D. Nevada. November 7, 1892.)

1. EQUITY RULES—ANSWER UNDER OATH—EVIDENCE.
   When an answer is verified, as called for by complainant, and the allegations of the answer are responsive to complainant's bill, the denials therein must, in order to entitle complainant to any relief, be overcome by the satisfactory evidence of two witnesses, or of one witness corroborated by circumstances which are equivalent in weight to another.

2. EVIDENCE—ORAL CONTRACT—DECLARATIONS BY STRANGERS.
   In an equity suit for the enforcement of an oral contract to convey mining claims, the declarations of defendant, made to strangers to the transaction, in general chance conversations, are insufficient to establish the contract.

3. SAME—MINING COPARTNERSHIP—TRUST—INSUFFICIENCY OF EVIDENCE.
   Upon a review of the facts, which are fully stated in the opinion, held, that the evidence was insufficient to establish a mining copartnership between the parties, or to create any trust by operation of law, or to justify a decree for specific performance.

4. SAME—CONTRACT—SPECIFIC PERFORMANCE.
   Whether a contract be such as is provable by parol, or is required by the statute of frauds to be in writing, it must be certain and unequivocal in all its essential terms, either within itself, or by reference to some agreement or matter, or it cannot be enforced.

In Equity. Bill for dissolution of a mining copartnership, and for a decree compelling defendant to convey an undivided one-half interest in certain mining claims. Bill dismissed.

A. C. Ellis and W. A. Beatty, for complainant.

Thomas Wren, for defendants.

HAWLEY, District Judge. This is a bill in equity. Sarah C. Watson, wife of A. R. Watson, died after the commencement of this suit, and proper substitution has been made. Reference need only be made to the defendant A. R. Watson. Complainant lives in California. Defendant resides in White Pine county, Nev. Complainant claims to be the owner of the undivided one half of certain mining claims and water rights in Robinson and Osceola mining districts, situate in White Pine county, Nev. She avers that a mining copartnership was formed between her and the defendant, A. R. Watson, in said claims and water rights, and prays for an accounting of the rents, issues, and profits which have been derived therefrom, for a dissolution of the copartnership, and for a decree compelling defendant to convey to her the undivided one-half interest in the properties described in the bill.

The contention of complainant is that in February, 1888, complainant and defendant were respectively the owners of certain mining claims, and also owned certain other mining claims as tenants in common; that, prior to that time, the complainant owned certain mining claims in the mining districts aforesaid, in common with defendant, Watson, and Cox and Dodge; that they had been engaged for several years prior to February, 1888, in developing the property, and in an endeavor to sell the same; that the complainant had advanced large sums of money for such purposes to Cox, Dodge, and defendant, and that she had succeeded, by regular deeds of conveyance, to the interests of said Cox and Dodge in certain of said claims; that defendant was a poor man, with limited means, and that complainant had advanced all the money which had been raised or used in or about the development of the various mining properties mentioned in the bill prior to February, 1888; that in the month of February, 1888, (should be March,) the complainant and defendant entered into a mining copartnership, the terms of which were that complainant was to contribute to the partnership all of her interests in the mining claims in both of said mining districts, whether her interests stood in her name alone or in common with defendant or other persons; that defendant was to contribute all his interests in the mining claims in both of said districts, whether standing in his own name or in common with the complainant; that the complainant agreed to advance money for the improvement and development of the mining properties, and to sell or dispose of the same; that defendant agreed to give his skill, experience, and knowledge as a practical miner in opening up, developing, and working said claims; that the complainant and defendant were to be equal owners in the mining properties, and in the rents, issues, and profits thereof. Complainant claims that in pursuance of this agreement, and at the time it was entered into, in White Pine county, she paid defendant $200 for the purpose of carrying out the terms of said contract and agreement of copartnership, and particularly for the purpose of an expenditure upon the Joanna mine,—which claim is the principal bone of contention in this suit; that at

the same time she gave to Mrs. Watson the sum of $52; that afterwards, and in further pursuance of said agreement, complainant advanced to defendant various sums and amounts of money, aggregating over $500. Complainant, in her bill, in this connection alleges "that in the month of August, 1888, she advanced to the defendant, A. R. Watson, and at his request, and under and in pursuance of said contract, and for the purpose, as represented to complainant by the defendant, A. R. Watson, of removing certain liens upon said mining claims and property standing in the name of the defendant, A. R. Watson, which said defendant represented he had created, and particularly from the Joanna mine, the Great Western mine, and the Joanna No. 2 mine, in said Robinson district, the sum of four thousand dollars in cash, and, in addition thereto, executed her promissory note for one thousand dollars, and delivered the same to the defendant, A. R. Watson, upon his representation that the same was necessary to protect the title and right of possession of complainant and said defendant in and to said mining properties."

The bill of complaint was verified, and a verified answer was not waived. The answer denies each and every allegation of the complaint, except as therein admitted. The admissions necessary to be noticed are "that complainant, as the agent and for and on behalf of one Mrs. Ashley, and not otherwise, as complainant informed him, loaned said defendant $4,000 at the time and place alleged in complainant's bill. * * * That he told complainant that if she could sell any mine or mines of defendant in said Robinson and Osceola mining districts he would give her half the money realized from said sales, provided the mine or mines were sold at a price fixed and approved by defendant; and in the year 1888 he had an understanding and agreement with complainant that she should have the privilege of selling any mine or mines owned by defendant in said districts, or either of them, for one year, upon which she would put up the money to pay the annual assessment work, and have and receive one half of the sum realized from the sale of said mine or mines. That, in pursuance of said agreement, she advanced the sum of $100 to defendant to do the annual assessment work on the Joanna mine in the year 1888, and said money was expended in doing said work. That, in addition to the expenditure of said $100 on said Joanna mine, said defendant expended more than $200 additional in money and labor of his own. That in the month of August, 1888, defendant told complainant that he would give her one half of the Joanna mine if she would furnish a centrifugal mill that would crush 25 tons of ore per day, to work the ores of the said Joanna mine. Said mill was to be sent up by her to said district in September of the same year, but to carry out said agreement said complainant wholly failed, neglected, and refused." That in the month of February, 1888, complainant proposed to him to relocate about one dozen copper claims, which he declined to do, as the claims were "wild cats." That at said time complainant was negotiating to bond and sell to one Bailey 13 copper mines, owned by defendant. That upon his refusal to relocate the claims in the joint name of complainant and defendant she requested him to relocate the claims, which he did, and that she advanced to him $200 for that

purpose. That the bond to Bailey fell through, and that complainant subsequently negotiated to bond and sell all of said copper mines and an iron mine known as the "Pilot Knob" to one Derre. That, in putting said mines in shape to be inspected by experts, he incurred an expense of three or four hundred dollars, none of which has ever been repaid to him. That said copper mines were bonded to said Derre. That after the transfer of the bond to Derre he desired an extension of time within which to comply with its terms upon his part. That defendant refused to extend the time, except upon condition that $5,000 should be advanced to pay off certain incumbrances upon his property. That at that time complainant wrote that the sale of the copper mines was a certainty, and in the month of August, 1888, she told him that she had procured $4,000 from her aunt, Mary Ashley, to be loaned to him upon certain terms, whereupon "she paid him the $4,000, and he gave her an order for $10,000, payable out of the money to be realized from the sale of said copper mines, (the terms referred to,) and complainant agreed to send defendant the other $1,000 on the first of the succeeding month of December, * * * but complainant failed to send $1,000." The mining properties described in the bill of complainant include 44 different mining claims, most of them copper, one iron, others silver, and some gold claims.

The answer is verified, and is responsive to complainant's bill. The denials in the answer must, therefore, under the equity rules of this court, be overcome by the satisfactory evidence of two witnesses, or of one witness corroborated by circumstances which are equivalent in weight to another, before complainant can be granted the relief she asks. Slessinger v. Buckingham, 8 Sawy. 469, 17 Fed. Rep. 454; Vigel v. Hopp, 104 U. S. 441; Morrison v. Durr, 122 U. S. 518, 7 Sup. Ct. Rep. 1215. Judge Sawyer, in Slessinger v. Buckingham, called the attention of counsel to this rule, and pointed out the great advantage to complainants of waiving an answer under oath.

The testimony is very voluminous, conflicting, contradictory, and, in many respects, unsatisfactory. Complainant and defendant are the principal witnesses. Their correspondence continues over a period of five or six years, and numerous letters of both parties have been introduced in evidence. There are several letters, written by defendant, that of themselves tend to corroborate the testimony given by complainant; but, when all his letters are examined, it is found that both before and after the alleged agreement, claimed to have been made in February, 1888, the defendant indiscriminately used the words "I," "we," "our," "your," "us," "mine." Complainant's letters to him in relation to their interests in the mines in Osceola and Robinson mining districts do not make any special mention of any agreement or understanding such as she testifies to as having been made in February, 1888, but constantly allude to the prospects of making a sale of the properties. A large majority of her letters speak of the prospective sale of the copper mines, in regard to which there is no controversy in this suit. Her letters are not inconsistent with the claim of defendant that the agreement between them was to the effect that she should have the privilege of selling any mine he owned for the period of one year, upon which she would advance sufficient money to pay the annual as-

sessment, or upon which she would erect a suitable mill for working the ore. There is no difference in the tone of her letters written prior or subsequent to February, 1888. Defendant admits that he promised complainant a half interest in the Gilded Age and Hopewell claims if she would send up a mill with two concentrators, which she agreed to do; but he denies that she complied with her promise. He also admits that he offered to give her one half interest in any of his mines upon which she would furnish a mill, but says that this arrangement was never carried out. The copper claims that Cox and Dodge were originally interested in, and whose interests the complainant afterwards obtained, were located in 1884. The assessment work was not kept up thereon, and the claims were relocated in the spring of 1888, in complainant's name. The testimony tends very strongly to show that they were of no real value, and were what is known in mining parlance as "wild cat claims."

The "Yount," subsequently known as the "Paymaster," was a silver mining claim, and was located in the joint name of complainant and defendant. There is no controversy as to that claim. Complainant insists that the witnesses Derre and Peasley corroborated her testimony as to the agreement that she was an equal owner with defendant in all of the mining properties set out in her bill. The testimony of these witnesses is confined to their recollection of conversations had with the defendant, wherein he made the general statement that complainant was his partner in all of his mining property. Defendant admits that he told Peasley when he was at work on the Joanna mine, under a lease, that complainant had authority to sell the mine, and, if sold, that they would each have one half of the profits of the sale. He denies that he ever told Peasley or Derre that complainant was an equal partner of his in all the mines he owned. These declarations of defendant, of whatever purport they may have been, were made to strangers to the transactions between complainant and defendant in general offhand conversations, which the witnesses could not be expected to recollect from any interest they might have in the matter, and may have been imperfectly heard or incorrectly remembered, and were for this reason, as well as others, insufficient to establish the contract between the complainant and defendant. Purcell v. Miner, 4 Wall. 517. The complainant advanced to defendant during the year 1888 about $500. There is, in relation to this, as in other matters, a conflict as to the purpose for which the money was advanced, and also some difference as to the amount advanced, the complainant's testimony supporting her bill and defendant's is in favor of his answer. The theory upon which complainant principally relies for a decree in her favor is that the testimony given by defendant is absolutely false, and unworthy of belief.

The characters of complainant and defendant were vigorously attacked in the oral argument. The testimony shows that complainant is an educated woman of literary attainments and culture, having, or claiming to have, an extensive and friendly acquaintance with men of great wealth, who are seeking financial ventures of a speculative character, and is exceedingly hopeful and somewhat visionary as to her ability to make a success of any enterprise which she attempts

to carry out. The defendant is a rough, frontier backwoodsman, a pioneer miner of skill and experience, a shrewd and sharp man in making trades, somewhat illiterate, very profane, and prone to talking extravagantly as to the value of his mines and general prospects. Neither of the parties seems to have been possessed of much ready means. Both were in debt. Complainant relied upon rich relatives and friends, and claims that she had an influence whereby she could raise the money to comply with her agreement. Her counsel claim that defendant was in absolute poverty, and his family in want, and that he depended solely upon complainant to prosecute the work upon the mining properties. There are many discrepancies in the testimony of both parties. The testimony shows that defendant had expended from ten to fifteen thousand dollars in prospecting, locating, exploring, and developing mining claims in Robinson and Osceola mining districts; that while he was mines-poor, he always managed to make a fair living for himself and family, and provided them with a reasonably comfortable country home, with sufficient furniture and all the necessaries of life. He was what might be termed an "energetic rustler," and when his money became exhausted in the attempt to develop his mines he turned his attention to trading in cattle and other stock, and thereby managed at all times to provide a living for himself and family. During the year 1888, and up to the time when the correspondence between the parties ceased, in the fall of 1889, work was being prosecuted by the defendant on several of his mines, and some ore extracted therefrom, and reduced to bullion. No account of the money thus expended or received was kept by defendant. No request was ever made upon the part of the complainant to have any account kept or rendered. In the state court, where this cause was originally commenced, complainant alleged that the contract upon which the suit is based was made in 1884. After the case was transferred to this court, a reformed complaint was filed, upon which the case was tried, alleging that the contract was made in February, 1888. Both complaints were verified. The strongest testimony assailing the character of the defendant is in relation to the manner in which he obtained $4,000, advanced by Mrs. Ashley at complainant's request, upon the representation of defendant that his property was "in soak," and would be lost unless $5,000 was advanced to him without delay. Defendant admits that he wrote a letter to that effect to complainant, and that it was not entirely true, but says he made the representation at complainant's request, which she emphatically denies. According to her testimony, defendant was clearly guilty of obtaining this money by false pretenses. According to his testimony, she put up the job, and instructed him how to write, so as to deceive other parties. His conduct in relation to this transaction was extremely reprehensible, to say the least, under any view that can possibly be taken of the testimony. There is the usual conflict as to how the money thus obtained was to be used; defendant connecting it with the bond for the sale of the copper claims as an advance payment; complainant testifying that it was to be used for the purpose of carrying out the agreement made in February, 1888. She, however, admits that it was a loan, and claims that the money was to

be repaid to Mrs. Ashley (her aunt) by defendant and herself, and, in addition thereto, Mrs. Ashley was to receive the sum of $10,000 out of the money to be realized from the sale of the copper claims, and that at that time complainant believed that a sale of the copper claims was a certainty. No sale was ever perfected.

After the correspondence between the parties ceased, the complainant sent an attorney and an agent to White Pine county, to investigate the matters involved in this controversy. At that time suit was brought by her agent in her name against the defendant to recover the said sum of $4,000, claimed to have been obtained by false pretenses. That suit was, before the commencement of this suit, dismissed, at the request of the complainant. There are many other facts and circumstances in the testimony upon which the respective parties rely, but enough has been referred to to illustrate the general character of all of the material evidence introduced. Complainant does not rely upon any written contract. The only writing upon which she relies is contained in the letters of defendant. These letters do not refer to any oral contract. No statement is contained therein as to what the terms of any parol contract or agreement were. The most that is claimed for them is that defendant recognized that complainant had an equal interest with him in the Joanna and other claims. There is no pretense that the letters state the terms of any contract whereby such an interest was acquired, or was to be acquired, kept up, or maintained.

After a careful and thorough examination of all the testimony, I am unable to say that it satisfactorily proves a mining copartnership, as claimed by complainant. The case does not come within the rule announced in Settembre v. Putnam, 30 Cal. 495, or Lawrence v. Robinson, 4 Colo. 577. The testimony is insufficient to create any trust by operation of law. Ducie v. Ford, 138 U. S. 592, 11 Sup. Ct. Rep. 417; 10 Amer. & Eng. Enc. Law, 12, and authorities there cited. The testimony of complainant is at best uncertain and indefinite as to the lapse of time during which the alleged copartnership was to continue; as to the length of time that defendant was to devote his skill, energy, and attention to the exploration and development of the mining properties; as to the amount of money complainant was to advance; and as to the time that complainant was to continue to devote her efforts to make a sale of any or of all of said property. The testimony as to any contract is so vague, uncertain, and contradictory that a court of equity would not be justified in exercising its extraordinary jurisdiction to decree a specific performance.

Whether a contract be such as is provable by parol, or is required by the statute of frauds to be in writing, it must be certain and unequivocal in all its essential terms, either within itself or by reference to some other agreement or matter, or it cannot be specifically enforced. 1 Story, Eq. Jur. §§ 764, 767; Colson v. Thompson, 2 Wheat. 336; Purcell v. Miner, 4 Wall. 513, 519; Williams v. Morris, 95 U. S. 456; Hennessey v. Woolworth, 128 U. S. 438, 9 Sup. Ct. Rep. 109; Minturn v. Baylis, 33 Cal. 133; Agard v. Valencia, 39 Cal. 301; Evans v. Lee, 12 Nev. 399.

Let judgment be rendered in favor of defendant for his costs.